# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCOTT BOEHM,

                Plaintiff,

v.

CHRIS LAZARCZYK d/b/a
NOMARFANFORLIFE,

                Defendant.

Case No. 19-CV-1039-JPS

**ORDER**

On July 19, 2019, Plaintiff filed a complaint alleging that Defendant violated the Copyright Act, 17 U.S.C. § 101 *et seq.*, by impermissibly using Plaintiff's copyrighted photographs to sell sports memorabilia. (Docket #1). Defendant was served with the complaint on August 16, 2019. (Docket #3). However, Defendant did not appear or otherwise defend this action within the time provided by the Federal Rules of Civil Procedure, so the Clerk of the Court, at Plaintiff's request, entered default against Defendant on October 21, 2019. *See* (Docket #5).

On January 8, 2020, Plaintiff filed a motion for default judgment. (Docket #7). Plaintiff's certificate of service reflects that Defendant was served with this motion via first class mail. (Docket #9). Defendant has not responded to the motion in any fashion, and the deadline for doing so has expired. *See* Civ. L.R. 7(b); Fed. R. Civ. P. 6(d) (providing three additional days to respond to motions served by mail). As a result, the Court treats the motion as unopposed. Civ. L.R. 7(d). The facts pleaded in the complaint establish Defendant's liability. (Docket #1 at 2–5). Plaintiff nevertheless bears the responsibility to prove up his damages under Rule 55(b)(2) of the

Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (citations and quotations omitted). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.*

A copyright infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer. . .or (2) statutory damages[.]" 17 U.S.C. § 504(a). To recover actual damages and profits, "the copyright owner is required to present proof only of the infringer's gross revenue. . ." *Id.* § 504(b). In the alternative, a "copyright owner may elect, at any time before final judgment is rendered, to recover. . .an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually. . .in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). To receive statutory damages or attorney's fees, the plaintiff must establish that the infringement occurred after an unpublished photograph was copyrighted, or, if the infringement occurred after the photograph was published but before it was copyrighted, that the copyright was registered within three months of publication. *Id.* § 412. If the copyright owner proves that the infringement was willful, the Court "in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). The court has "almost unfettered discretion" in awarding damages within these ranges. *Broadcast Music, Inc.*

*v. Star Amusements, Inc.*, 44 F.3d 485, 489 (7th Cir. 1995). The court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (citation omitted).

In *Reed v. Ezelle Investment Properties, Inc.*, a district court awarded a plaintiff $1,500.00 for a photographic copyright violation where a real estate broker illegally used the plaintiff's registered image on its commercial website for approximately nine months. 353 F. Supp. 3d 1025, 1029–30, 1038 (D. Or. 2018). In reaching this figure, the court noted that the real estate broker had profited from the use of the photo, but the plaintiff lacked actual damages. *Id.* at 1038. The court found it relevant that the parties were not competitors, and that real estate broker took down the infringing photo immediately upon receiving a cease-and-desist letter. *Id.*

Similarly, in *Barcroft Med., Ltd. v. Coed Media Group, LLC*, a dispute arose between a celebrity gossip website and a purveyor of celebrity photos when the gossip website used the purveyor's photos without permission. 297 F. Supp. 3d 339, 346 (S.D.N.Y. 2017). After considering the "expenses saved and profits earned by [defendant] on the one hand, and the revenue lost by [p]laintiff, on the other[,]" the court awarded the plaintiff the greater of either $750.00 per violation or five times the licensing fee per violation.

By contrast, in *White v. Marshall*, this Court awarded damages of $20,000.00 per photograph in a "protracted" infringement lawsuit. 771 F. Supp. 2d 952, 957–58 (E.D. Wis. 2011). In that case, plaintiff was an orthodontist who had patented an orthodontic device, had taken before-and-after photos to market the device, and had copyrighted those photos. *Id.* at 954. The defendant had a one-year license to use those copyrighted

photos, but continued using the photos for three years after the license expired. *Id.* at 955. The parties had previously been involved in a serious, inter-family litigation regarding the orthodontic device patent. *Id.* at 954. The plaintiff moved for default judgment in the copyright case. *Id.* at 955.

In determining the award, the Court considered the fact that defendant had previously paid plaintiff $250,000.00 for "a bundle of rights that included a one-year use of the copyrighted photographs." *Id.* at 957. The Court also found it relevant that the photographs were of such a "substantial commercial value" that defendants "likely found the risk of liability for copyright infringement to be less than the commercial benefits flowing from use of the photographs." *Id.* Additionally, the Court took note of a $500.00 per day liquidated damages provision in a separate agreement between the parties regarding the use of the parties' commercial assets. *Id.* In light of those factors, the court determined that an award of $10,000.00 per violation was appropriate, and increased the damages by an additional $10,000.00 per violation in light of the "ample evidence of willful infringement," i.e., the one-year license that had been lapsed for three years. *Id.* at 958. There were 14 violations, so the total statutory damages amounted to $280,000.00, joint and severally owed between three defendants. *Id.* at 960.

Here, Plaintiff seeks $30,000.00 per violation, for a total of $1,770,000.00 in damages, as well as attorney fees and litigation costs in the amount of $3,150.00 and $474.18, respectively. (Docket #7-5). In support of his damages, Plaintiff has filed copyright registration information for each work that he claims was wrongfully used by Defendant. (Docket #8-1). He seeks recovery for fifty-nine photos that have appeared unlawfully on an indefinite number of Defendant's products. *See* (Docket #8 at 2)

Case 2:19-cv-01039-JPS   Filed 02/21/20   Page 4 of 7   Document 10

("Defendant has advertised, displayed, sold and/or distributed *hundreds* of products featuring unauthorized copies of Plaintiff's photographs") (emphasis added); (*Id.* at 4) ("Defendant has advertised, displayed, sold, and/or distributed *dozens* of products featuring unauthorized copies of Plaintiff's photographs") (emphasis in original). Plaintiff explains that he typically licenses his photos to media outlets such as Getty and the Associated Press, but does not indicate his licensing fee.

Plaintiff provides evidence that his photographs were covered by copyright during the relevant time: twenty-six of the photographs were registered prior to publication; fourteen of the more recent photographs were registered within three months of publication; and nineteen photographs have been registered since 2011, well before the Defendant began his infringing conduct. *See* (Docket #8 at 2–3, Docket #8-1). Plaintiff also chronicled his failed attempts to notify Defendant of a prior copyright violation lawsuit, from which Defendant was ultimately dismissed due to a failure to effectuate service. (Docket #8-2). In this case, Defendant was served in August of 2019, and has apparently continued to infringe Plaintiff's copyright. The Court finds that Plaintiff has met his burden of establishing that he is eligible to receive statutory damages, as his work was covered by copyright during the relevant time periods and Defendant appears to have been willfully ignorant of his violation of the copyrights. However, the Court will not approve $30,000 per violation because that amount is excessive in light of the circumstances.

There is not the same evidence of commercial value and willfulness as there was in the *White* case. There is evidence that Defendant sold Plaintiff's photographs for profit as sports memorabilia and was either aware or willfully blind to the fact that he was doing so in violation of the

Case 2:19-cv-01039-JPS   Filed 02/21/20   Page 5 of 7   Document 10

copyright law. To be sure, Defendant's repeated, continued, and self-interested use of Plaintiff's photography warrants a penalty. However, the penalty should be proportional to other, similar photograph copyright infringement cases, and should take into account the circumstances of these particular parties. Although Defendant markets his sports memorabilia through websites such as eBay, Amazon, and sportsmemorabilia.com, he only sells his merchandise for between $8.00 and $110.00 apiece—and usually on the low end of that range. He appears to be a one-man business, and while Plaintiff may characterize him as an "experienced businessman," (Docket #8 at 4), there is not a lot of evidence in the record to support that notion—Defendant is not a registered corporation and does not even appear to have his own website. Additionally, Plaintiff alleges lost profits as a result of Defendant's actions, (Docket #1 at 6) but provides no evidence of this allegation, nor does he indicate his typical licensing fee.

In light of those facts and considerations, the Court finds that statutory damages of $3,500.00 per violation are appropriate, for a total award of $206,500.00. This should sufficiently compensate Plaintiff for the violation of his copyright while deterring other online enterprisers from future infringement. The Court will also award Plaintiff his requested attorney fees and litigation costs.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Docket #7) be and the same is hereby **GRANTED**; Defendant shall pay to Plaintiff the total sum of $210,124.18, which consists of the statutory damages of $206,500.00 ($3,500.00 per photo, for fifty-nine photos), as well as attorney fees of $3,150.00 and litigation costs of $474.18, together with post-judgment interest as provided by law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of February, 2020.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge